**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 17-184-DLB**

**PEARLIE SUE GAMBREL, as Administrator**                               **PLAINTIFF**
**of the Estate of Jessie J. Mills**

**vs.**                            <u>**MEMORANDUM OPINION AND ORDER**</u>

**KNOX COUNTY, KENTUCKY, et al.**                                **DEFENDANTS**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

On June 29, 2016, law-enforcement officers were dispatched in response to an alleged child abduction.  When the officers located Jessie Mills and his daughter, they approached him, tased him, beat him, and shot him twice, ultimately killing him.  This case is about whether the force the officers used was excessive.  The question is whether the Plaintiff has stated plausible claims upon which relief can be granted.

Plaintiff Pearlie Sue Gambrel, the mother and administratrix of Jessie Mills's estate, filed the instant action pursuant to 42 U.S.C. § 1983, seeking recompense for alleged violations of Mills's constitutional rights, as well as various state-law torts, against the law-enforcement officers involved in the shooting—Deputy Mikey Ashurst and Constable Brandon Bolton—and the municipal government they represent—Knox County (collectively "the Defendants").  (Doc. # 1).  The Court has federal-question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On June 29, 2016, Jessie Mills retrieved his three-year-old daughter from her

guardian's home.[1]  (Doc. # 4 at ¶ 15).  Those actions prompted the child's guardian to call 911.  *Id.*  Deputy Ashurst and Constable Bolton were dispatched to look for Mills and his daughter.  *Id.* at ¶¶ 16-17.  Shortly after driving away from the guardian's home, Mills ran out of gas and began walking towards a gas station, with his daughter in tow.  *Id.* at ¶ 18.  Before Mills reached the gas station he was approached by Ricky Hobbs, a local resident, and his daughter's guardian.  *Id.* at ¶¶ 19-20.  Despite the guardian's request that Mills return the child, he continued walking towards the gas station.  *Id.* at ¶ 21.  Shortly thereafter, Deputy Ashurst and Constable Bolton arrived on the scene and approached Mills.  *Id.* at ¶ 22.

The situation escalated quickly.  According to the Amended Complaint, Deputy Ashurst grabbed Mills's arm and hit him on the back of the head with a flashlight.  *Id.* at ¶ 23.  Although Mills relinquished control of his daughter to Deputy Ashurst and the child was returned to her guardian, the physical altercation continued.  *Id.* at ¶¶ 23-24.  Specifically, the Amended Complaint alleges that Constable Bolton tased Mills multiple times, which caused him to fall on the ground.  *Id.* at ¶ 26.  While Mills was laying on the ground, Deputy Ashurst and Constable Bolton hit and kicked him repeatedly.  *Id.* at ¶¶ 27-41.  Using "such force that [the Defendants] eventually lost their breath."  *Id.* at ¶¶ 29-30.  After retreating and taking a short break, the Defendants continued kicking Mills in the head and body, before retreating again.  *Id.* at ¶¶ 34-35, 37.  At that time, Deputy Ashurst threatened to shoot Mills if he did not get on his stomach, and drew and pointed his firearm at Mills.  *Id.* at ¶ 38.  Because Mills was unresponsive, the Defendants kicked

---

[1]     Given the present procedural context, the factual summary that follows is taken from the Amended Complaint (Doc. # 4) and construed in Plaintiff's favor.  *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (internal citations omitted).

him once more in their attempt to get him up.  *Id.* at ¶ 40.

As Mills attempted to stand up, he took two stumbling steps forward, and Deputy Ashurst shot him in his abdomen.  *Id.* at ¶ 42-44.  As Mills stooped over and attempted to lift his head, Deputy Ashurst fired a second shot, striking Mills in the chest.  *Id.* at ¶ 46. Mills squealed, grabbed his body, and fell to the ground.  *Id.* at ¶ 47.  He died from his gun-shot wounds.  *Id.* at ¶¶ 48-49.

On June 28, 2017, Plaintiff filed the instant action against Deputy Ashurst, Constable Bolton, and Knox County.[2]  (Doc. # 1).  On that same day, and before a responsive pleading was filed, Plaintiff amended the Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1).  (Doc. # 4).  In response to Plaintiff's Amended Complaint, the Defendants filed a combined Answer and Motion to Dismiss, asserting various affirmative defenses, claiming that they are immune from suit, and arguing that the Amended Complaint fails to state a claim upon which relief can be granted.  (Docs. # 11 and 12).  The Motion is fully briefed (Docs. # 15 and 16), and ripe for review.  For the reasons stated herein, Defendants' Motion is hereby **granted in part and denied in part**.

## II.  ANALYSIS

Before addressing the substantive merits of this matter, the Court must first address a procedural peculiarity.  By filing a combined Answer and Motion to Dismiss— curiously filing the omnibus document twice, in fact—the Defendants have exhibited confusion regarding the Federal Rules of Civil Procedure and have conflated practice under Rule 7(a)(6) and Rule 12(b)(6).  (Docs. # 11 and 12).

---

[2]     The Plaintiff asserts causes of action in her capacity as Representative of the Estate, as well as on her own behalf.  (Doc. # 4 at ¶¶ 10-11).

A motion to dismiss under Rule 12(b)(6) must "be made before pleading." Fed. R. Civ. P. 12(b). The Defendants, however, filed their Motion to Dismiss at the same time as their Answer. Consequently, Defendants' post-answer Motion to Dismiss is untimely. *McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012) ("Defendants filed an untimely motion to dismiss pursuant to Federal Rule of 12(b)(6), as it was filed after Defendants' Answer.").

Although Rule 12(b) does not permit the concurrent filing of a motion to dismiss and an answer, some courts have permitted such filing. *See, e.g.*, *Hopkins v. Sellers*, No. 1:09-cv-304, 2010 WL 3303651, at *1 (E.D. Tenn. Aug. 19, 2010) (considering a motion to dismiss that was combined with an answer); *Ebenisterie Beaubois Ltee v. Marous Bros. Constr., Inc.*, No. 02-cv-985, 2012 WL 32818011, at *2 n.4 (N.D. Ohio Oct. 17, 2002) (considering a motion to dismiss that was filed on the same day as the answer). Other courts have taken a stricter approach and dismissed untimely motions to dismiss. *See, e.g.*, *Hand v. Houk*, No. 2:07-cv-846-SSB, 2008 WL 5378358, at *2 (S.D. Ohio Dec. 23, 2008) (denying Rule 12(b)(6) motion to dismiss because "[t]he Rule does not envision that a motion to dismiss will be combined with an answer"); *BAC Home Loans Servicing LP v. Fall Oaks Farm LLC*, 848 F. Supp. 2d 818, 822-23 (S.D. Ohio 2012) (denying a motion-to-dismiss component of defendant's answer as untimely and explaining that "[t]his strict approach presents no substantive prejudice … because [defendant] can simply make its arguments post-answer through another mechanism that complies with the Civil Rules.").

This Court, however, joins other courts that have favored a middle course, remedying the procedural deficiency by construing the post-answer motion to dismiss as

a motion for judgment on the pleadings under Rule 12(c).[3]  *See, e.g.*, *Metro. Prop. & Cas. Ins. Co. v. Pest Doctor Sys., Inc.*, No. 3:14-cv-143-WHR, 2014 WL 2855003, at *1 (S.D. Ohio June 23, 2014); *Ruppe v. Knox Cty. Bd. of Educ.*, 993 F. Supp. 2d 807, 809-10 (E.D. Tenn. 2014); *Doe v. Sentech Emp't Servs., Inc.*, 186 F. Supp. 3d 732, 736 (E.D. Mich. 2016).  Such an approach strikes the proper balance between respect for the Civil Rules and the interests of justice.  It has also garnered support from the Sixth Circuit.  *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988) (Although the motion to dismiss, which was filed after the answer, was technically improper, Sixth Circuit held that "as a matter of motions practice, such a motion may be properly considered as one for judgment on the pleadings under [Rule] 12(c), and evaluated, nonetheless, under the standards for dismissal under Rule 12(b)(6).").

Therefore, Defendants' Motion to Dismiss and Answer to First Amended Complaint (Doc. # 11) is **construed** as an Answer and shall be **docketed** as such.  The Defendants' duplicative Motion to Dismiss and Answer to First Amended Complaint (Doc. # 12) is **construed** as a Motion for Judgment on the Pleadings and shall be **docketed** as such. And, the portions of the Answer (Doc. # 11), which present identical and redundant arguments as the construed Motion for Judgment on the Pleadings are **stricken from the Answer** pursuant to Federal Rule of Civil Procedure 12(f).

### A.    Standard of Review

The standard of review for motions for judgment on the pleadings under Rule 12(c) is the same as that for motions to dismiss under Rule 12(b)(6).  *See Roth v. Guzman*,

---

[3]     A Rule 12(c) motion for judgment on the pleadings can be filed once the pleadings have "closed."  Fed. R. Civ. P. 12(c).  Here, all Defendants have answered; therefore, a Rule 12(c) motion would not be premature.  *Cf. Hoskins v. Knox Cty.*, No. 6:17-cv-84-DLB-HAI, 2018 WL 2018 WL 1352163, at *3-4 (E.D. Ky. Mar. 15, 2018).

650 F.3d 603, 605 (6th Cir. 2011). Under that rule, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint need not contain "detailed factual allegations" to survive a motion for judgment on the pleadings, Rule 12(c) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). Put another way, "the plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Wesley v. Campbell*, 779 F.3d 421, 427 (6th Cir. 2015) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

As is the case with a motion to dismiss under Rule 12(b)(6), in a Rule 12(c) motion for judgment on the pleadings, the Court "must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* at 428. After all, the "defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Id.*; *see also Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir. 2015).

### B.    Federal § 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Atkins*, 487

U.S. 42, 48 (1988); *Miller v. Sanilac Cty.*, 606 F.3d 240, 247 (6th Cir. 2010). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

In this case, there is no dispute that Defendants were acting under color of state law. Therefore, the only question is whether Jessie Mills was "deprived of a right secured by the Constitution or the laws of the United States." *Id.* The Court will address each of Plaintiff's claims in turn, construing the Amended Complaint in the light most favorable to the Plaintiff and accepting its allegations as true.[4]

### 1. Count One: Excessive Force

An excessive-force claim is "most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons … against unreasonable … seizures.'" *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend IV). "A seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008) (internal citations omitted). The "apprehension" of Jessie Mills "by the use of deadly force is a seizure subject to the reasonableness of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

---

[4] As a preliminary matter, the Court notes that the Plaintiff may not recover *personally* under § 1983 for the violation of her son's constitutional rights. "In the Sixth Circuit, a [§] 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort." *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). As such, "only the purported victim, or his estate's representative(s), may prosecute a [§] 1983 claim; conversely, no cause of action may lie under [§] 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members." *Id.* The Amended Complaint complies with these conditions. The federal § 1983 claims are brought by the Estate. (Doc. # 4 at ¶¶ 67, 73). Only Counts Four and Seven, which assert claims for wrongful death and negligent infliction of emotional distress, are brought by the Plaintiff on her own behalf. *Id.* at ¶¶ 83, 98.

To satisfy the Fourth Amendment, a law-enforcement officer's use of force must have been objectively reasonable under the circumstances in which it occurred. *Garner*, 471 U.S. at 8-9. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Therefore, "[t]he calculus of the reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

"Given the extreme intrusion caused by use of deadly force, the countervailing governmental interests must be weighty indeed; 'only in rare instances may an officer seize a suspect by use of deadly force.'" *Davenport v. Causey*, 521 F.3d 544, 551 (6th Cir. 2008) (quoting *Whitlow v. City of Louisville*, 39 F. App'x 297, 302-03 (6th Cir. 2002)). Although "the same balancing test is applied," the use of deadly force is deemed reasonable only when "'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.'" *Bell v. Cumberland Cty.*, 665 F. App'x 421, 425 (6th Cir. 2016) (quoting *Garner*, 471 U.S. at 7); *see also Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009) (citing *Garner*, 471 U.S. at 7, 11). Therefore, "whether the use of deadly force at a particular moment is reasonable depends primarily on [an] objective assessment of the danger a suspect poses at that moment."

*Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007).  The "critical question is whether a reasonable officer in the defendant's position would have had probable cause to believe that the suspect posed a threat of serious physical harm, either to the officer or to others." *Zulock v. Shures*, 441 F. App'x 294, 302 (6th Cir. 2010) (citing *Bouggess*, 482 F.3d at 889).

In addition to challenging the veracity of the Amended Complaint's factual allegations, the Defendants assert that they are entitled to qualified immunity and argue that Plaintiff's excessive-force claim does not contain sufficient factual matter "to put the Defendants on notice as to how they allegedly violated the Plaintiff's constitutional rights." (Doc. # 12 at 3-5).  In response, the Plaintiff argues that the allegations in the Amended Complaint are sufficient to state an excessive-force claim and that the Defendants are not entitled to qualified immunity.  (Doc. # 15 at 4-8, 13-16).

**a.    The Defendants are not entitled to qualified immunity.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity also balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*

There is a "two-tiered inquiry" for resolving claims of qualified immunity.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford*

*Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). First, the Court must determine whether "the facts alleged make out a violation of a constitutional right."[5] *Id.* If the plaintiff has shown a violation of a constitutional right, then the Court must proceed to the second step and "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated" the right. *Id.*

To survive a motion to dismiss on qualified-immunity grounds, both inquiries must be resolved in the Plaintiff's favor. *See Wesley*, 779 F.3d at 489. The Plaintiff bears "the burden of showing that" the Defendants are "not entitled to qualified immunity." *Johnson*, 790 F.3d at 653; *see also Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). "At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Id.* (citing *Wesley*, 779 F.3d at 428).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability … it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (citing *Hunter*, 502 U.S. at 227). The Sixth Circuit, however, has clarified that only truly "insubstantial claims against government officials should be resolved … prior to broad discovery," *Johnson*, 790 F.3d at 653, and has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley*, 779 F.3d at 433.

---

[5] The Court recognizes that the sequential procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) is no longer required. *See Pearson*, 555 U.S. at 227.

Thus, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433-34 (internal citations and quotation marks omitted).

With respect to the second prong of the qualified-immunity analysis, the Defendants have not argued that the constitutional rights allegedly violated were not clearly established at the time of the alleged incident. Nor could they. At the time Deputy Ashurst and Constable Bolton approached Jessie Mills, "the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest" was clearly established. *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006) ("Cases in this circuit" clearly established "the unconstitutionality of the use of gratuitous force against helpless and incapacitated suspects during arrest" by 1991.); *Phelps v. Coy*, 286 F.3d 295, 301 (6th Cir. 2002) (finding "no governmental interest in continuing to beat [the arrestee] after he had been neutralized, nor could a reasonable officer have thought there was"). Likewise, at the time Deputy Ashurst shot Jessie Mills, it "ha[d] been clearly established in this circuit for some time that individuals have a right not be shot unless they are perceived as posing a threat to officers or others." *King v. Taylor*, 694 F.3d 650, 664 (6th Cir. 2012); *see also Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (("[I]t is axiomatic that individuals have a clearly established right not to be shot absent probable cause to believe that they pose a threat of serious physical harm, either to the officer or to others."); *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005).

Therefore, the Court's qualified-immunity analysis will focus on the first prong—whether the facts alleged make out a constitutional violation. Again, at this early stage in the litigation, the Court "must construe the complaint in the light most favorable to the

plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley*, 779 F.3d at 428. Despite the Defendants' argument to the contrary (Doc. # 12 at 4), there is no heightened pleading standard for § 1983 cases. *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (quoting *Goad v. Mitchell*, 297 F.3d 497, 502-03 (6th Cir. 2002) ("Because we are at the pleading stage of this case, and because there is no 'heightened pleading requirement … for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity,' [plaintiff] was not required to plead her prima facie case."). Accordingly, all that is required is that the complaint contain sufficient factual matter to plausibly allege that the defendant's use of force was excessive and violated the Fourth Amendment.

The Plaintiff has satisfied that standard. The Amended Complaint alleges that Constable Bolton tased Mills multiple times and that Constable Bolton and Deputy Ashurst repeatedly attacked Mills while he was laying on the ground. (Doc. # 4 at ¶¶ 26-54). The Amended Complaint also alleges that Deputy Ashurst shot Mills while he attempted to stand up and comply with the officers' commands. *Id.* at ¶¶ 42-46. Furthermore, the Amended Complaint alleges that, during the course of these events, Mills did not possess a weapon and did not pose any threat to the officers or others. *Id.* at ¶¶ 51-53.

The Defendants' argument that the Amended Complaint does not contain sufficient factual matter "to put [them] on notice as to how they allegedly violated the Plaintiff's constitutional rights" is meritless. (Doc. # 12 at 5). And at this stage of the proceedings, Defendants' attack on the veracity of the Plaintiff's version of events falls on deaf ears. The Plaintiff has adequately alleged that the Defendants unreasonably employed

excessive, deadly force without probable cause to believe that Mills posed a threat of serious physical harm, either to the officer or others, in violation of the Fourth Amendment. Accepting those facts as true—as the Court is required to do—the Court finds that the Plaintiff has alleged sufficient factual matter to state a plausible § 1983 excessive-force claim against the Defendants. Therefore, the Defendants' construed Motion for Judgment on the Pleadings (Doc. # 12) is **denied** with respect to Count One.

### 2. Count Two: Due Process

The Due Process Clause of the Fourteenth Amendment prohibits state and local governments from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The clause contains both procedural and substantive guarantees. *EJS Props. LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Procedural due process requires "that the government provide a 'fair procedure' when depriving someone of life, liberty or property." *Id.* Substantive due process, on the other hand, "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Specifically, substantive due process "prevents the government from engaging in conduct that shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002).

In the Amended Complaint, the Plaintiff asserts a substantive-due-process claim against the Defendants, alleging that Deputy Ashurst's shooting of Jessie Mills "shocks the conscience." (Doc. # 1 at ¶ 70). The Defendants seek dismissal of that claim, arguing that the Defendants' actions "occurred in such succession" that they do not "shock the

conscience."  (Doc. # 12 at 13-15).

A review of the Amended Complaint reveals that the Plaintiff has failed to state a substantive-due-process claim under the Fourteenth Amendment, but not for the reason urged by the Defendants.  Instead, the claim fails for a more fundamental flaw.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395).  Thus, "*all* claims that law-enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process approach.'"  *Graham*, 490 U.S. at 395.  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,'" is the proper constitutional basis for Plaintiff's excessive-force claim.

Therefore, Plaintiff's Fourteenth Amendment substantive-due-process claim must be dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013); *see also Lane v. Pulaski Cty.*, No. 6:12-cv-62-GFVT, 2014 WL 996293, at *9 (E.D. Ky. Mar. 13, 2014) (finding that plaintiff's excessive-force claim was properly analyzed under the Fourth Amendment and dismissing plaintiff's claim based on the Fourteenth Amendment); *Epperson v. City of Humboldt*, 140 F. Supp. 3d 676, 687-88 (W.D. Tenn. 2015) (holding "the true vehicle for [plaintiff's excessive-force] claim is the Fourth Amendment, which

holds law-enforcement officers accountable for injuries sustained as a direct encounter between them and private citizens" and dismissing the Fourteenth Amendment claim). Accordingly, the Defendants' construed Motion for Judgment on the Pleadings (Doc. # 12) is **granted** with respect to Count Two.

### 3. *Count Five: Municipal Liability*

#### a. **Knox County is not immune from federal-law claims.**

As a threshold matter, the Court notes that the Defendants' claims of sovereign immunity provide no shield against Plaintiff's federal claims. The Eleventh Amendment's sovereign immunity protects states and their instrumentalities from suit in federal court; however, it does not bar § 1983 actions against counties and municipalities. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). "Although Kentucky counties are 'cloaked with sovereign immunity' from state-law claims, they are exposed to liability under federal law." *Smith v. Buckler*, No. 2:14-cv-51-DLB, 2016 WL 4132198, at *3 (E.D. Ky. Aug. 2, 2016) (quoting *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004)). Accordingly, Plaintiff's § 1983 claims against Knox County are not barred by sovereign immunity.[6]

#### b. **The Complaint states a plausible municipal-liability claim.**

Having determined that sovereign immunity does not bar Plaintiff's municipal-liability claim against Knox County, the Court will now consider whether Plaintiff's § 1983

---

[6]  And, of course, qualified immunity does not protect municipalities, it shields government officials sued in their individual capacity. *Scott v. Clay Cty.*, 205 F.3d 867, 879 (6th Cir. 2000) ("the doctrine of qualified immunity safeguards only certain *natural person* defendants in their individual capacities," qualified immunity does not "excuse a municipality or county from constitutional liability, even where the municipal or county actors were personally absolved by qualified immunity, *if* those agents *in fact* had invaded the plaintiff's constitutional rights.").

municipal-liability claims survive dismissal under Rule 12(c).[7]

Counties and municipalities "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Bright v. Gallia Cty.*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Therefore, a plaintiff raising a municipal-liability claim under § 1983 "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).

Put simply, for a § 1983 municipal-liability claim to survive dismissal, "a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the

---

[7] The Defendants' argument that Knox County cannot be held liable under § 1983 because the County Sheriff and County Constable are "constitutionally elected officials" and Knox County "does not have day[-]to[-]day control of the operations of the Knox County Sheriff's Department" is meritless. (Doc. # 12 at 16).

First, if the Complaint had named the Knox County Sheriff's Department as a defendant in this action, the Court would have construed such a claim as one against Knox County. A county sheriff's department is not a "person" subject to suit under § 1983 because municipal departments are not suable under § 1983. *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding the same and finding that "Jefferson County is the proper party to address the allegations [in the] complaint"). District courts in the Eastern and Western Districts of Kentucky have adopted this practice with near uniformity. *See, e.g.*, *Lowe v. Ky. Court of Justice*, No. 2:14-cv-168-KKC, 2015 WL 1526106, at *3 (E.D. Ky. Apr. 2, 2015) (holding the Boone County Sheriff's Department and the Boone County Jail are "simply operating divisions of Boone County itself, not independent legal entities" and construing the claims as ones against Boone County directly); *Ford v. Batts*, No. 5:17-cv-94-TBR, 2018 WL 912609, at *3 (W.D. Ky. Feb. 15, 2018) (construing § 1983 claim against Ballard County Sheriff's Department as a claim against Ballard County).

Furthermore, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers" if those officials' "acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Therefore, the Knox County Sheriff's and the Knox County Constable's actions can "be attributed directly to the county, without any showing of ratification by the [Knox County] Fiscal Court." *Whittle v. Floyd*, 202 F.3d 217, at *3 (6th Cir. 1999) (table).

defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright*, 753 F.3d at 660 (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). The Defendants have made arguments regarding the first and third elements. (Doc. # 12 at 16-19). Because the Court has already determined that the Amended Complaint adequately alleges that the Defendants used excessive, deadly force in violation of the Fourth Amendment, the third element—that a policy or custom of Knox County caused that violation to happen—is the only remaining element at issue.

"A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiff's Amended Complaint appears to assert a *Monell* claim under three theories: the existence of a policy of inadequate training, the existence of a policy of inadequate supervision, and the existence of a custom of tolerance or acquiescence of federal-rights violations. (Doc. # 4 at ¶¶ 84-90). The Court will address each of these theories, and the sufficiency of the factual allegations in support thereof, in turn. [8]

---

[8] Again, despite Defendants' claims to the contrary, there is no heightened pleading standard for § 1983 claims, including municipal-liability claims. The Supreme Court has held so explicitly. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) ("We granted certiorari to decide whether a federal court may apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure—in civil rights cases alleging municipal liability under … 42 U.S.C. § 1983. We hold it may not.").

### i.    Failure to Train

Beginning with the failure-to-train claim, the Supreme Court has held that "the inadequacy of … training may serve as the basis for § 1983 liability." *Harris*, 489 U.S. at 388. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)).

To state a § 1983 failure-to-train claim upon which relief can be granted, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference' to the rights of persons with whom the untrained employees come into contact." *Id.* (citing *Harris*, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (citing *Harris*, 489 U.S. at 389).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal citations omitted). However, "in a narrow range of circumstances" a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). When "the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for such training, the failure to train will result in § 1983 liability. *Harris*, 489 U.S. at 390.

In this case, the Plaintiff alludes to a pattern of constitutional violations, but has not put forth specific factual allegations that establish such a pattern. (Doc. # 4 at ¶ 86(c)). Instead, the Plaintiff alleges that Knox County acted with deliberate indifference in failing to train its police officers regarding the "use[ ] of excessive deadly force." *Id.* at ¶¶ 86(a)-(b)). Those allegations, taken as true, fall squarely within the "narrow range of circumstances" that the Supreme Court contemplated in *Harris*. *Connick*, 563 U.S. at 63.

The Amended Complaint alleges that Knox County "arms its [deputies and constables] with firearms and deploys" them to execute arrest warrants "without training its [deputies and constables] in the constitutional limitation on the use of deadly force." *Id.* "Given the known frequency with which police attempt to arrest … felons and the 'predictability that [a deputy or constable] lacking specific tools to handle that situation will violate citizens' rights,'" Knox County's alleged failure-to-train constitutes deliberate indifference to the "highly predictable consequence" of violations of arrestees' constitutional rights. *Id.* (quoting *Bryan Cty.*, 520 U.S. at 409). Moreover, Plaintiff has adequately alleged that the failure to train was the "moving force" behind the violation of Mills's Fourth Amendment rights. (Doc. # 4 at ¶ 86(a)); *Burgess*, 735 F.3d at 479. Therefore, Plaintiff's Amended Complaint has sufficiently stated a § 1983 failure-to-train claim, and the Defendants' Motion to Dismiss (Doc. # 12) is **denied** with respect to that claim.

### ii.    Failure to Supervise

Plaintiff's failure-to-supervise claim also survives dismissal.  "Few published opinions thoroughly discuss the law on failure-to-supervise claims, especially as distinct from failure-to-train claims."  *Amerson v. Waterford Twp.*, 562 F. App'x 484, 491 (6th Cir. 2014).  And the Sixth Circuit recently noted that the failure-to-supervise "theory of municipal liability is a rare one."  *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010).  "Most agree that it exists and some allege they have seen it, but few actual specimens have been proved."  *Id.*  "It appears to relate to two more common theories of municipal liability: an inadequate-training theory or an acquiescence theory."  *Id.*  "However characterized, [a failure-to-supervise claim] must meet the 'rigorous standards of culpability and causation' that the Supreme Court has required when a plaintiff claims that a municipality has indirectly caused a violation of federal rights in spite of its 'facially lawful' policies."  *Id.*

Therefore, "[s]imilar to the failure-to-train inquiry outlined above, to sustain a failure-to-supervise claim, the plaintiff 'must show that'" Knox County "acted with 'deliberate indifference' to the risk of the constitutional violation and that its deliberate indifference was the moving force behind the assault."  *Amerson*, 562 F. App'x at 492 (quoting *Mize*, 373 F. App'x at 500).  For the same reasons as Plaintiff's failure-to-train claim, Plaintiff's allegation that Knox County failed to supervise its deputies and constables—who are armed and have the authority to execute arrests—constitutes an obvious deliberate indifference to the risk of constitutional violations, which was the "moving force" behind the alleged constitutional violation.  At this stage in the litigation, where the Court must "construe the complaint in the light most favorable to the plaintiff,

accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," the Amended Complaint contains sufficient factual matter to state a § 1983 failure-to-supervise claim that is plausible on its face. *Wesley*, 779 F.3d at 428. Accordingly, the Defendants' Motion to Dismiss (Doc. # 12) is **denied** with respect to that claim.

### iii. Custom of Tolerance

In addition to the failure-to-train and failure-to-supervise theories, the Amended Complaint also alleges that Knox County had an unwritten policy, practice, or custom of "failing to adequately investigate, punish, and discipline" its officers' use of excessive force. (Doc. # 4 at ¶ 86(b)). Specifically, the Plaintiff claims that as a result of Knox County's "widespread practice" of failing to investigate and discipline officer misconduct, Knox County deputies and constables have come to "believe [that] their actions will never be meaningfully scrutinized," and thus, Knox County has "directly encourag[ed] future uses of excessive deadly force." *Id.*

To plausibly state a municipal-liability claim based on "an 'inaction theory,' where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched," the plaintiff must show: "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's conduct was the 'moving factor' or direct causal link in the constitutional deprivation." *Thomas*, 398 F.3d at 429 (citing *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

The Plaintiff has failed to plausibly allege municipal liability against Knox County based on a custom-of-tolerance theory. The Amended Complaint is wholly devoid of any facts alleging prior instances of similar misconduct by any Knox County deputies or constables that could demonstrate that the County had notice or constructive notice of constitutional violations. In fact, the only specific instance mentioned is the instant action. (Doc. # 4 at ¶ 86(d)-(e)) (alleging that Deputy Ashurst was not disciplined for Mills's death and instead was rewarded with commendations). This Court cannot find "notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff." *Nouri v. Cty. of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 796-96 (6th Cir. 2005)). "To do so risks 'collapsing … the municipal liability standard into a simple *respondeat superior* standard." *Id.* (quoting *Thomas*, 398 F.3d at 432-33). As pled, the Amended Complaint "has only [Mills's] experience on which to rely, and that is not enough to state a claim against the County." *Id*.

Therefore, the Amended Complaint states a plausible § 1983 municipal-liability claim against Knox County for failure to train and failure to supervise; however, it does not state a plausible claim based on a custom-of-tolerance theory. Accordingly, the Defendants' Motion to Dismiss (Doc. # 12) is **granted** with respect to the custom-of-tolerance claim.

### C.     State-Law Claims

#### 1.     *Count Three: Assault and Battery*

"Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d

474, 480 (Ky. Ct. App. 2001).  A law-enforcement officer "making an arrest may use such force as may be necessary to make the arrest, but no more."  *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973); Ky. Rev. Stat. Ann. § 503.090.  Therefore, "[t]he use of excessive force by a police officer constitutes the intentional tort of battery."  *Ali v. City of Louisville*, No. 3:03-cv-427-TBR, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006).

Defendants' argument for dismissal of Plaintiff's assault and battery claims tracks their § 1983 excessive-force argument.  (Doc. # 12 at 9-11).  Although "the analysis of excessive-force claims under § 1983 is different from the analysis under state law," as is the standard for qualified immunity, the Court reaches the same result as it did for the § 1983 excessive-force claim—dismissal is not warranted.  *Coitrone v. Murray*, 642 F. App'x 517, 524 (6th Cir. 2016) (citing *Ali*, 2006 WL 2663018, at *8).

### a.    Defendants are not entitled to qualified immunity.

"Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority."  *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2001).  "Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officers duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts."  *Id.* at 522.  At bottom, whether qualified immunity is available depends "on the function performed" and whether the official acted in "good faith."  *Id.* at 521.

There can be no argument that the Defendants' actions were anything other than discretionary. *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922 (E.D. Ky. 2008) (police officer's use of force is clearly discretionary act within the scope of his authority as a police officer); *see also Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014) (determination of the amount of force required to effect an arrest is a discretionary act within the scope of school-resource officer's authority). Thus, "the burden shifts to the Plaintiff 'to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith.'" *Nichols*, 26 F. Supp. 3d at 642 (quoting *Yanero*, 65 S.W.3d at 523).

In *Yanero*, the Kentucky Supreme Court adopted the United States Supreme Court's definition of "bad faith," which has "both an objective and subjective aspect":

> The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." *Wood v. Strickland*, 420 U.S. 308, 322 (1975). The subjective component refers to "permissible intentions." *Id.* Characteristically, the Court has defined these elements by identifying the circumstances in which qualified immunity would not be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury...."

*Yanero*, 65 S.W.3d at 523 (citing *Harlow*, 457 U.S. at 815).

"Thus, in the context of qualified official immunity, 'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt

motive." *Id.* Put simply, "[i]f an officer 'knew or reasonably should have known that the action he took would violate a [clearly established] right of the plaintiff,' bad faith may be found to exist." *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 485-86 (Ky. 2006) (quoting *Yanero*, 65 S.W.3d at 523).

The Amended Complaint alleges that Constable Bolton tased Mills multiple times and that Constable Bolton and Deputy Ashurst repeatedly attacked Mills while he was laying on the ground. (Doc. # 4 at ¶¶ 26-54). The Amended Complaint also alleges that Deputy Ashurst shot Mills while he attempted to stand up and comply with the officers' commands. *Id.* at ¶¶ 42-46. During the course of these events, the Plaintiff claims that Mills did not possess a weapon and did not pose any threat to the officers or others. *Id.* at ¶¶ 51-53. At the pleading stage, where the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," the Plaintiff's Amended Complaint contains sufficient factual matter to suggest bad faith. *Wesley*, 779 F.3d at 428. Therefore, the Defendants are not entitled to qualified immunity and their construed Motion for Judgment on the Pleadings (Doc. # 12) is **denied** with respect to Count Three.

### 2. *Count Four: Wrongful Death*

"Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused it, or whose agent … caused it." Ky. Rev. Stat. Ann. § 411.130(1). A wrongful-death claim "is, at its core, a tort claim based upon negligence." *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016). Thus, to state a plausible wrongful-death claim, a plaintiff must allege "(1) a legally cognizable duty, (2) a breach of that duty, (3) causation linking

the breach to an injury, and (4) damages." *Id.* (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)).

As with the assault and battery claims, the Defendants' ask the Court to dismiss Plaintiff's wrongful-death claim based on their entitlement to qualified immunity. (Doc. # 12 at 9-10). Specifically, the Defendants claim that the Plaintiff "cannot show that" Deputy Ashurst and Constable Bolton "acted in bad faith." *Id.* Again, Defendants' qualified-immunity argument fails. *See supra* pp. 23-24.

The Amended Complaint alleges that the Defendants' wrongful acts—tasing Mills multiple times, repeatedly attacking Mills while he lay on the ground, and shooting Mills, all without justification—caused Mills's death. (Doc. # 4 at ¶¶ 26-54). At the pleading stage, where the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," the Amended Complaint contains sufficient factual matter to suggest bad faith. *Wesley*, 779 F.3d at 428. Accordingly, the Defendants are not entitled to qualified immunity and their construed Motion for Judgment on the Pleadings (Doc. # 12) is **denied** with respect to Count Four.

### 3. Count Six: Respondeat Superior

Under the doctrine of *respondeat superior*, a "principal is vicariously liable for damages caused by torts of commission or omission of an agent … acting on behalf of and pursuant to the authority of the principal." *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). Therefore, "[u]nder certain conditions, an employer will be vicariously liable for the torts of its employees." *Booker v. GTE.net LLC*, 350 F.3d 515, 518 (6th Cir. 2003) (citing *Osborne v. Payne*, 31 S.W.3d 911 (Ky. 2000)).

The Defendants seek dismissal of Count Six, arguing that Knox County has immunity from Plaintiff's *respondeat superior* claim. (Doc. # 12 at 6-8). In response, the Plaintiff argues that the *respondeat superior* claim "was properly raised because it is an independent state-law claim" and was not alleged as a federal § 1983 claim. (Doc. # 15 at 11). But that argument misses the point. Although counties are not shielded by immunity from federal-law claims, they are immune from state-law claims. The Plaintiff's alternative argument—that the Claims Against Local Government Act has waived that immunity—is similarly misguided.

"Kentucky counties are cloaked with sovereign immunity." *Smolcic*, 142 S.W.3d at 132 (citing *Monroe Cty. v. Rouse*, 274 S.W.2d 477, 478 (Ky. 1955)). And that immunity extends beyond direct claims against counties. Sovereign immunity also shields counties from vicarious liability. *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 163 (Ky. 2003). "If damages could be recovered against a county on the basis of *respondeat superior*, the concept of sovereign immunity would be largely nullified because state and county governments perform their ministerial functions by and through their agents, servants, and employees." *Id.* Therefore, a plaintiff cannot rely on a *respondeat superior* theory of liability to circumvent a county's sovereign immunity. *Phillips v. Lexington-Fayette Urban Cty. Gov't*, 331 S.W.3d 629, 632 (Ky. Ct. App. Dec. 29, 2010). Nor does the Claims Against Local Governments Act, Ky. Rev. Stat. Ann. § 65.200 *et seq.*, constitute a waiver of "a county's immunity from vicarious liability for damages arising from" its employees' tortious actions. *Schwindel*, 113 S.W.3d at 163; *see also Harris v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:11-cv-338-JGH, 2012 WL 777263, at *2 (W.D. Ky. Mar. 8, 2012). Therefore, Knox County is immune from Plaintiff's *respondeat superior* claim and

Defendants' construed Motion for Judgment on the Pleadings (Doc. # 12) is **granted** with respect to Count Six.

### 4. *Count Seven: Negligent Infliction of Emotional Distress*

Under Kentucky law, a plaintiff claiming negligent infliction of emotional distress must allege: "(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Osborne v. Kenney*, 399 S.W.3d 1, 17 (Ky. 2012). Further, the plaintiff must demonstrate "a 'severe' or 'serious' emotional injury," which "occurs where a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the case." *Id.* at 9.

The Defendants seek dismissal of Plaintiff's negligent-infliction-of-emotional-distress claim, arguing that the Amended Complaint does not allege that "any actions taken toward Plaintiff were intended to solely cause emotional distress." (Doc. # 12 at 12). In response, the Plaintiff concedes that the Amended Complaint fails to state a plausible claim for negligent infliction of emotional distress and voluntarily dismisses Count Seven. (Doc. # 15 at 11). Accordingly, the Defendants' construed Motion for Judgment on the Pleadings (Doc. # 12) is **granted** as to Count Seven.

### 5. *Count Eight: Indemnification*

"In 1988, the General Assembly passed [the Claims Against Local Governments Act], which sought to protect current and former civil servants from the financial burden of litigation arising from their work for local governments." *Louisville-Jefferson Cty. Metro Gov't v. Braden*, 519 S.W.3d 386, 392 (W.D. Ky. Jan. 27, 2017) (citing Ky. Rev. Stat. Ann. § 65.2001(2); *Richardson v. Louisville-Jefferson Cty. Metro Gov't*, 260 S.W.3d 777, 781

(Ky. 2008)).  "To that end, [the Claims Against Local Governments Act] requires local governments 'to provide for the defense of any employee … in any action in tort arising out of an act or omission occurring within the scope of his employment.'"  *Id.* (quoting Ky. Rev. Stat. Ann. § 65.2005(1)).

Whether the Claims Against Local Governments Act requires Knox County to indemnify Deputy Ashurst or Constable Bolton, however, is a matter between those parties.  As explained above, the Claims Against Local Governments Act does not constitute a waiver of a county's immunity from liability for its employees' torts.  *Schwindel*, 113 S.W.3d at 163; *see also Harris*, 2012 WL 777263, at *2.  Nor does it open a back door through which plaintiffs can sneak in tort claims against counties, even if the claim is disguised as one for indemnity.  Therefore, Plaintiff's indemnity claim against Knox County is dismissed and Defendants' construed Motion for Judgment on the Pleadings (Doc. # 12) is **granted** as to Count Eight.

### III.    CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)    Defendants' Motion to Dismiss and Answer to First Amended Complaint (Doc. # 11) is **construed** as an Answer and the Clerk of the Court shall **docket** it as such;

(2)    The Defendants' duplicative Motion to Dismiss and Answer to First Amended Complaint (Doc. # 12) is **construed** as a Motion for Judgment on the Pleadings and the Clerk of the Court shall **docket** it as such;

(3)    The portions of the Answer (Doc. # 11), which present identical and redundant arguments as the construed Motion for Judgment on the Pleadings are

**stricken from the construed Answer** pursuant to Federal Rule of Civil Procedure 12(f).

(4)     Defendants' construed Motion for Judgment on the Pleadings (Doc. # 12) is **GRANTED** as to **Count Two** (§ 1983 substantive due process), **Count Six** (respondeat superior), **Count Seven** (negligent infliction of emotional distress), and **Count Eight** (indemnification), and **DENIED** as to **Count One** (§ 1983 excessive force), **Count Three** (assault and battery), **Count Four** (wrongful death) and **Count Five** (§ 1983 municipal liability); and

(5)     Pursuant to Federal Rules of Civil Procedure 16 and 26, an Order for Meeting and Report will be entered and filed contemporaneously herewith.

This 23rd day of March, 2018.

Signed By:

*David L. Bunning*     *DB*

United States District Judge